IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-cv-80022-Rosenberg/Reinhart

UNITED STATES OF AMERICA f/u/b/o
OFFICE GAP, INC. and OFFICE GAP, INC.,

                Plaintiff,

vs.

THE CINCINNATI INSURANCE COMPANY and
J.A.M. CONSTRUCTION SERVICES, INC.,

                Defendants.

_____/

## REPORT AND RECOMMENDATON

      This matter is before the Court on Plaintiff's Motion for Summary Judgment.  ECF No. 29.  The Honorable Robin L. Rosenberg referred the Motion to me for a Report and Recommendation.  ECF No. 40.  I have reviewed the pleadings, including the respective Statements of Undisputed Material Facts.  ECF Nos. 30, 44, 45, 46, 47, 48.  This matter is now ripe for decision.  I recommend that Plaintiff's Motion for Summary Judgment (ECF No. 29) be **DENIED.**

      Plaintiff Office Gap, Inc. ("Office Gap") sought to be the flooring subcontractor on a construction project at the West Palm Beach Veterans Administration Medical Center.  Defendant J.A.M. Construction Services, Inc. ("JAM") was the general contractor for the project.  It is disputed whether a J.A.M. and Office Gap contracted with each other.  Office Gap claims they did, after which Office Gap retained L. Cox Flooring ("Cox") to perform the work; Cox was to be supervised (and presumably paid) by Office Gap.  JAM claims that it did not contract with Office Gap – it contracted with Cox with the understanding that Office Gap would provide project

management services to Cox (and presumably be paid for those services by Cox).  Under either

scenario, Office Gap has not been paid for whatever services it provided.  It claims breach of

contract by JAM and seeks payment (pursuant to the Miller Act) under a bond issued by Defendant

The Cincinnati Insurance Company.  As is apparent from this summary, there are disputed issues

of material fact that preclude granting Office Gap's Motion for Summary Judgment.

## LEGAL PRINCIPLES

*Motion for Summary Judgment*

The legal standard for summary judgment is well-settled:

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.

. . .

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.

*Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1307–08 (S.D. Fla. 2014) (J. Bloom) (citations

omitted).

*Breach of Contract*

"'The elements of a breach of contract action are: (1) a valid contract; (2) a material breach;

and (3) damages.'"  *Merin Hunter Codman, Inc. v. Wackenhut Corr. Corp.*, 941 So. 2d 396, 398

(Fla. Dist. Ct. App. 2006) (citations omitted).

*Miller Act*

As the Eleventh Circuit has explained:

The Miller Act requires a contractor to furnish performance and payment bonds to the United States "[b]efore any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government." 40 U.S.C. § 3131(b). The purpose of the Miller Act is to ensure that those who furnish labor and materials for public construction projects will be paid. *Graybar Elec. Co. v. John A. Volpe Const. Co.*, 387 F.2d 55, 58 (5th Cir. 1967).[4] Because the Miller Act is "highly remedial in nature," it is to be liberally construed "to effectuate the congressional intent to protect those whose labor and materials go into public projects." *Id.* (quotation omitted).

The act provides that every person who has furnished labor or materials under a contract for which a payment bond under 40 U.S.C. § 3131(b)(2) was issued, but who has not been paid within ninety days of the last day of performance, "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1). However, any such action "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4).

*Thomas v. Burkhardt*, 636 F. App'x 992, 995 (11th Cir. 2016).  A valid contract for labor or materials is a prerequisite for a cause of action under the Miller Act.

## MATERIAL FACTS

Each party's Statement of Material Facts is supported by an affidavit by its owner.  *See* ECF Nos. 30 (Office Gap's Statement of Undisputed Material Facts), 44 (JAM's Reply and Additional Allegations of Fact), 48 (Office Gap's Reply to Additional Allegations of Fact).  Office Gap relies on a Declaration by Mariela Borrello.  ECF No. 30-1.  JAM relies on an Affidavit of Jose A. Mantilla that responds to the Borrello Declaration.  ECF No. 44-1.  Each sworn statement complies with Rule 56(c)(4), which requires;

An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

The sworn statements contain a more detailed factual summary than the respective Statements of Material Fact, so I consider them in full in deciding Plaintiff's Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Unless otherwise noted, the following facts are not disputed.

Office Gap is a small minority owned contractor that serves as a flooring distributor and subcontractor, which has been in business since circa 1999. In or about October 2018, the United States Department of Veteran Affairs awarded to JAM the prime contract for a construction project at the VA Medical Center in Palm Beach County. The project included the removal and replacement of flooring in an approximate 4,200 square foot lobby. The Cincinnati Insurance Company, on behalf of JAM, issued a Miller Act payment bond relating to the project.

After being awarded the contract, JAM contacted Office Gap about serving as its flooring subcontractor. Office Gap and JAM met on October 10, 2018, after which JAM asked Office Gap to submit its proposal. The parties dispute whether at the October 10 meeting Office Gap told JAM it did not carry insurance and would need to be covered under insurance maintained by JAM, and whether JAM agreed to provide this insurance. *Compare* Borrello Declaration, ¶8 *with* Mantilla Affidavit at 4-5).

On October 11, JAM emailed Office Gap and requested a proposal. ECF No. 30-3. At 12:24 a.m. on October 15, 2018, Office Gap emailed a proposal to JAM; JAM. responded at 9:12 a.m. that same day, "I'm afraid you are too high from other quotes. I want to give you the job but you need to get just below the attach cost provide by another contractor. I need your revised quote no later than 10 am today. I need to award this contract today so I can have them deliver by the 26 of Nov 2018 start date." ECF No. 30-4.

On October 16, 2018, at 9:49 a.m., Office Gap emailed JAM two updated proposals. One

(Quote #181310) listed $95,400 for the materials (carpet and tile) plus tax.  The other (Quote #181311) listed $60,000 for the flooring labor associated with demolition and installation of new flooring.  ECF No. 30-5.  JAM returned both proposals stamped "Approved 16 October 2018 by Jose A. Mantilla" and including a signature of "Jose A. Mantilla."  ECF Nos. 30-6, 30-7.  The cover email for the proposals stated, "Find attach approved quotes.  Please proceed to order the material for 26 Nov. start date.  See attach schedule and specs for submittal you need to send me.  The most important is the installer qualification letter and Samples.  See submittal requirements.  Please review submittal 6 and highlight the transition you are going to be using and where.  Example 1 carpet to terrazzo.  2 terrazzo to tile"  ECF No. 30-28.

On October 17, 2018, Office Gap communicated with the carpet manufacturer (Interface) about sending a material sample and  providing a quote; JAM. was copied on the e-mail.  ECF No. 30-30.

On October 18, 2018, at 4:28 p.m., JAM sent an email to Office Gap which read, "Mariela, Find enclose the contract for your review and signature."   Attached was a document titled "Subcontract Agreement for Building Construction."  It called for a payment of $155,400 "per sub-contractor quote approved on 10/16/18."  ECF No. 30-8 at 4.  It contained the signature of Jose A. Mantilla and a blank signature line for Office Gap.  Directly under the signature block it read, "**This document and all other documents requested in this contract, must be signed and returned within 7 days of receipt in order to become contractual.  If it is not return by that date, J.A.M. Construction reserves the right to cancel this agreement.**"   ECF No. 30-8 at 12 (emphasis in original).  Article 5 of the document required Office Gap to procure and maintain certain insurance (including workers compensation insurance, employer's liability insurance, comprehensive general liability insurance). Article 3.5 of the document provides, "**Subcontractor shall furnish to**

**the Contractor insurance certificates and an executed (signed) contract within seven (7) calendar days of the issuance of this Agreement.** Should the Subcontractor fail to furnish these required documents within seven (7) calendar days as stated above, the Contractor may elect to precede [*sic*] award the Subcontract to another subcontractor**.**" *Id.* at 6 (emphasis in original).

Office Gap claims it executed the contract but does not specify when or whether the executed contract was returned to JAM. ECF Nos. 30-1, ¶ 18; 30-9. JAM claims Office Gap did not return a signed copy to JAM or "any the documents required to finalize the subcontract." Mantilla Affidavit at 7.

The next day, October 19, Office Gap emailed JAM at 3:27 p.m. to report that it had obtained tile and carpet samples. It also said, "The installer needs to see the layout of both materials. When are you coming to Palm Beach?" JAM replied, "I will be there Tuesday the 24 Oct." ECF No. 30-10. JAM further replied at 4:40 p.m., "Check the contract and email me the copy signed the back page. The items that you need to send me like the insurance certificates can be deliver later. The letter with all your jobs reference I need them with the contract." ECF No. 30-32. That same day, JAM ordered the tile from Daltile, at a price of $62,800.79. ECF No. 30-33.

On October 23, Office Gap confirmed the meeting for the next day and stated, "I am bringing with me the demolition guys [meaning Cox]." ECF No. 30-12. The next day, Cox sent an estimate to Office Gap for $60,865.20 for demolition and installation of the carpet and tile. The estimate included $5,533.20 for "Overhead/Supervision." ECF No. 30-13.

The parties dispute the relationship between Cox and Office Gap. Office Gap claims it told JAM that Office Gap was going to subcontract with Cox as its installer, but that Office Gap

would provide supervision and project management.  *See* Borrello Affidavit, ¶¶ 20, 23.  JAMS claims,

> Office Gap did not introduce L. Cox Flooring as a subcontractor Office Gap would use.  Office Gap could not fund the project, did not have the licenses required to provide services as a flooring subcontractor and could not provide proof of insurance required by the proposed subcontract. . . . L. Cox Flooring was the one taking over the contract because he had all the documents required by the subcontract. I told Ms. Borrello that, if, L. Cox Flooring, sent me the required documents to serve as a subcontractor for the project, the subcontract will be given to L. Cox flooring and any other documents from that date forward with be under L. Cox flooring as the contractor doing the Job at the VA. She acknowledged my statement and mentioned would be involved in the project as Project Manager for L. Cox Flooring.

ECF No. 44-1 at 8.  JAM also claims, "While Office Gap introduced L. Cox Flooring to J.A.M., L. Cox Flooring was introduced as a replacement contractor, not a subcontractor to Office Gap." *Id.* at 9.

On October 25, Cox and JAM executed a Subcontract Agreement for Building Construction for $155,400.  Thereafter, Office Gap continued to interact with the VA and JAM. JAM continued to communicate with Office Gap about the project (including sending a copy of the carpet invoice and instructing Office Gap to obtain a security badge.  ECF Nos. 30-34, 30-14, 30-15, 30-16, 30-17, 30-18.  Office Gap also paid for the tile to be shipped from Daltile to Cox's warehouse.  ECF No. 30-19.  On January 15, 2018, Office Gap participated in the VA's inspection of flooring materials.  ECF No. 30-1, ¶ 31.

On January 16, 2019, Office Gap sent JAM an invoice for $16,111.55 for "Purchasing Services - As Per Contract Agreement."  ECF No. 30-25 at 3.  JAM refused to pay the invoice. ECF No. 30-25 at 1.  The invoice also indicates that it is being billed to Cox.  *Id.* at 3.

## DISCUSSION

Viewed in the light most favorable to JAM, the undisputed facts do not establish that a contract existed between JAM and Office Gap. It is disputed whether Office Gap timely returned an executed contract. On that basis alone, the motion for summary judgment should be denied.

Independently, although it is undisputed that Office Gap continued to be involved in the project after October 28, there are two competing positions about the arrangement under which Office Gap was performing these services. JAM asserts that it had contracted with Cox, who (independent of JAM) retained Office Gap to provide project management and supervision. Under this scenario, JAM had no legal duty to pay Office Gap. Office Gap asserts that it had contracted directly with JAM, then subcontracted with Cox for demolition and installation, with JAM's knowledge and consent. Under this scenario, JAM would have a legal duty to pay Office Gap. Viewing the facts in the light most favorable to JAM, this dispute cannot be resolved in Office Gap's favor at this stage of the case.

## RECOMMENDATION

WHEREFORE, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 29] be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THEY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**DONE AND SUBMITTED** in Chambers this 4th day of August, 2020, at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE