## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:20-CV-80022-ROSENBERG/REINHART

UNITED STATES OF AMERICA f/u/b/o
OFFICE GAP, INC. and OFFICE GAP, INC.,

      Plaintiffs,

v.

THE CINCINNATI INSURANCE COMPANY
and J.A.M. CONSTRUCTION SERVICES, INC.,

      Defendants.

_____/

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiffs United States of America f/u/b/o Office Gap, Inc. and Office Gap, Inc.'s Motion for Summary Judgment.  DE 29.  The Court previously referred the Motion to the Honorable Bruce E. Reinhart for a Report and Recommendation.  DE 40.

Judge Reinhart issued a Report and Recommendation in which he recommended that the Motion for Summary Judgment be denied.  DE 49.  Judge Reinhart concluded that genuine issues of material fact exist as to whether the Subcontract Agreement for Building Construction between J.A.M. Construction Services, Inc. (the general contractor for a government construction project) and Office Gap (purportedly the flooring subcontractor) was executed.  *Id.* at 8.

Office Gap filed Objections to the Report and Recommendation.  DE 51.  As an initial matter, the Court notes that Office Gap makes various arguments in its Objections that it did not make in the briefing on its Motion for Summary Judgment.  The Court exercises its discretion and

addresses those arguments in this instance.  However, the parties are advised that, in the future, the Court may decline to consider arguments raised for the first time in Objections.  *See Williams v. McNeil*, 557 F.3d 1287, 1291-92 (11th Cir. 2009) (holding that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge").

Office Gap maintains that the Report and Recommendation "overlook[s]" the elements of a Miller Act claim.  However, Office Gap does not dispute that a contract is a necessary element of both a Miller Act claim and a breach-of-contract claim.  *See* 40 U.S.C. § 3133; *J.W. Bateson Co. v. U.S. ex rel. Bd. of Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 590 (1978) (stating that a contract with a prime contractor is a prerequisite to being considered a subcontractor under the Miller Act).  Thus, a genuine dispute as to the existence of a contract would preclude summary judgment on Office Gap's Miller Act claim and on its breach-of-contract claim.

Office Gap asserts that a binding contract existed between it and J.A.M. regardless of whether the Subcontract Agreement was executed.  According to Office Gap, an "operative" contract was formed when it submitted material and labor quotes[1] to J.A.M. and when J.A.M.'s president/owner signed the quotes and marked them "approved."  *See* DE 30-5, -6, and -7.  Office Gap points out that the Report and Recommendation does not address this argument.  That is unsurprising, though, because Office Gap's Motion for Summary Judgment and its Reply in support of the Motion are less than clear as to when, according to Office Gap, a contract was

---

[1] Office Gap refers to the quotes as "proposals."  *See, e.g.*, DE 29; DE 51.  The name given to Office Gap's submissions has no impact on the Court's analysis.

formed.  *See* DE 29; DE 47.  And Office Gap's breach-of-contract claim as pled in the Amended Complaint is based solely on a breach of the Subcontract Agreement.  *See* DE 21 at 7-8.

In any event, a genuine dispute exists on the issue of whether J.A.M.'s approval of Office Gap's quotes formed a contract.  That is because an enforceable contract requires a meeting of the minds on all essential terms.[2]  *See, e.g.*, *Knowling v. Manavoglu*, 73 So. 3d 301, 303 (Fla. 5th Dist. Ct. App. 2011) (explaining that "[w]hat constitutes the essential terms of a given contract differs according to the circumstances"); *De Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 681 (Fla. 1st Dist. Ct. App. 2007) ("A meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds." (alteration and quotation marks omitted)).  And whether a contract is integrated and complete is a factual issue that depends on the intent of the parties and that a court may resolve by considering parol evidence.  *See, e.g.*, *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 (Fla. 1st Dist. Ct. App. 2005); *Burgan v. Pines Co. of Ga., Ltd.*, 382 So. 2d 1295, 1296 (Fla. 1st Dist. Ct. App. 1980).

Here, there is evidence that the approval of the quotes was not intended to form a complete contract and did not demonstrate a meeting of the minds as to all essential terms.  For example, there is evidence that the parties' discussions were continuing on issues such as Office Gap's insurance.  *See* DE 46-1 ¶ 8.  The approved quotes did not contain anything approximating a merger or integration clause.  *See Jenkins*, 913 So. 2d at 53 n.1 ("A merger or integration clause is a contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject

---

[2] Office Gap applies Florida contract law in this action, and J.A.M. has not disputed that Florida law applies.

matter of the contract" (alteration and quotation marks omitted)).   Importantly, J.A.M. subsequently sent Office Gap the Subcontract Agreement that contained many more terms than were contained in the quotes and that included the language, "**This document and all other documents requested in this contract, must be signed and returned within 7 days of receipt in order to become contractual.**"  DE 30-8 at 12 (emphasis in original).  Viewing the evidence in the light most favorable to J.A.M., J.A.M.'s approval of the quotes may have meant no more than that the parties had agreed on one piece of what was intended to become a more extensive contract.  Thus, genuine issues exist that preclude summary judgment.

Office Gap contends that its performance on the contract (either the Subcontract Agreement or a contract formed by the approval of the quotes) "affirm[ed]" the contract.  A genuine issue exists as to whether any actions purportedly taken by Office Gap before October 24, 2018—communicating with a manufacturer, seeking samples, and obtaining material quotes— were contract performance or instead were efforts by Office Gap to gather information to determine whether it would be capable of performing on a contract.  *See* DE 30-1 ¶ 13.  As to any actions purportedly taken by Office Gap on or after October 24, as explained in the Report and Recommendation, a genuine issue exists as to whether those actions were at the request of L. Cox Flooring who had taken over as subcontractor after Office Gap rejected the contract, rather than actions under any contract with J.A.M.  *See* DE 46-1 ¶¶ 15, 20, 23.

Specific to the Subcontract Agreement, Office Gap argues that the Agreement can be enforced against J.A.M. even if Office Gap did not sign it because J.A.M. did sign it.  Office Gap cites one Florida case to support this assertion: *Skinner v. Haugseth*.  In *Skinner*, the court held that

> a contract not signed by all of the parties, but otherwise valid, may be upheld against
> a signing party, unless the nature of the wording of the contract indicates that his

signature was conditioned upon all other parties signing the contract, or he can prove by parol evidence that when he signed the contract he made it known to the other parties who now seek to sustain the contract that he only intended to be bound if all parties signed it.

426 So. 2d 1127, 1131 (Fla. 2nd Dist. Ct. App. 1983). *Skinner* surveyed caselaw from various states that, the court determined, had "a common thread of reasoning": "the question almost always seems to turn upon whether the signing party manifested the intent not to be bound by the contract unless all of the other parties joined in its execution." *Id.* at 1130. *Skinner*, and the cases that *Skinner* relied upon, do not help Office Gap because language in the Subcontract Agreement does manifest an intent that J.A.M. would not be bound unless Office Gap also signed the Agreement. As explained above, the Subcontract Agreement provided, "**This document and all other documents requested in this contract, must be signed and returned within 7 days of receipt in order to become contractual.**" DE 30-8 at 12 (emphasis in original).

Office Gap asserts that it signed the Subcontract Agreement at some point and that when it signed the Agreement "should be of no moment" because the Agreement states that it was "made" on October 18, 2018. *See* DE 30-9. As already stated, a genuine issue exists as to whether, on October 24, Office Gap rejected the Subcontract Agreement and Cox took over as subcontractor. According to J.A.M.'s president/owner, Office Gap stated on that date that it could not perform the contract and introduced Cox to J.A.M. as a replacement subcontractor. *See* DE 46-1 ¶¶ 15, 20, 23. Office Gap provides no authority to support a proposition that, if it rejected the Subcontract Agreement, it could thereafter essentially revive the Agreement and bind J.A.M. by signing it. Thus, the Court will not address this argument further. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (explaining that a court need not address an argument made without citation to any authority).

Finally, Office Gap has challenged the affidavit of J.A.M.'s president/owner as self-serving and unsupported by any other evidence. The Court need not respond to this challenge further than to point to *United States v. Stein*, in which the Eleventh Circuit held that a non-conclusory affidavit based on personal knowledge, even if uncorroborated and self-serving, can create a genuine dispute of material fact that defeats summary judgment. 881 F.3d 853, 857-59 (11th Cir. 2018).

The Court has reviewed the Motion for Summary Judgment, the Response and Reply thereto, the Report and Recommendation, Office Gap's Objections, J.A.M.'s Response to the Objections, and the entire record, and is otherwise fully advised in the premises. The Court agrees with the analysis and conclusion in the Report and Recommendation and finds Judge Reinhart's recommendation to be well reasoned and correct.

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that:

1.  Magistrate Judge Reinhart's Report and Recommendation [DE 49] is **ADOPTED** as the Order of the Court.

2.  The Objections to the Report and Recommendation [DE 51] are **OVERRULED**.

3.  For the reasons given in the Report and Recommendation and in this Order, Plaintiffs United States of America f/u/b/o Office Gap, Inc. and Office Gap, Inc.'s Motion for Summary Judgment [DE 29] is **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 7th day of October, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record